OPINION *Page 2 
{¶ 1} Defendant-appellant Willie L. Campbell appeals from his conviction and sentence in the Delaware County Court of Common Pleas on seven counts of Complicity to Forgery, felonies of the fifth degree in violation of R.C. 2923.03(A)(2); five counts of Forgery, felonies of the fifth degree in violation of R.C. 2913.31(A)(3); one count of Carrying a Concealed Weapon, a felony of the fourth degree in violation of R.C. 2923.12(A); one count of Having Weapons While Under a Disability, a felony of the fifth degree in violation of R.C. 2923.13(A)(2), and one count of Engaging in a Pattern of Corrupt Activity, a felony of the second degree in violation of R.C. R.C. 2923.32(A)(1). The plaintiff appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On August 21, 2006, the City of Westerville Police Department received a call regarding an attempt to pass a forged check at the U.S Bank Branch located inside a Giant Eagle Store in the City of Westerville, Ohio.[1] As a result, Mr. Terrance Hall was apprehended after attempting to pass a forged check.
 {¶ 3} Mr. Hall provided officers with a description of the individuals who brought him to the bank, and a description of their vehicle. Acting upon this information, officers stopped a vehicle matching the description. Appellant was in the driver's seat of the vehicle, Mr. Ricky Rhodes was in the passenger seat, and Mr. Brian Glasco was in the backseat of the vehicle. Mr. Rhodes' girlfriend owned the vehicle.
 {¶ 4} In response to questioning by the officer, appellant stated that there was a handgun in the glove box of the vehicle. Officers searched the vehicle and found a *Page 3 
loaded C252 7.62 Czech semi-automatic handgun in the glove box. Waste paper from payroll checks, as well as numerous checks were found between the front seats. Additional checks were also found in the rear seat.
 {¶ 5} The Bill of Particulars filed by the State set forth five counts of forgery and seven counts of complicity to commit forgery, all of which involved the accounts of Quality Employee Management and Cafe Brioso, between the dates of August 16 and August 21, 2006. The Bill of Particulars also set forth one count of engaging in a pattern of corrupt activity. The State alleged that the predicate offenses were forgery and complicity to forgery committed from August 16, 2006 to August 21, 2006, in connection with Terence Hall, Brian Glasco, Rickey Rhodes and Savaughn Conner. The enterprise was defined as consisting of Terrance Hall, Brian Glasco, Rickey Rhodes, and Savaughn Conner.
 {¶ 6} On July 6, 2007, the State of Ohio filed a Notice of Intention to Use 404(B) Evidence. The State of Ohio indicated that it wished to present evidence regarding counterfeit checks passed on the accounts of Quality Employee Management and Cafe Brioso between the dates of August 16 and August 21, 2006, and surveillance video stills of those checks being passed. Specifically, those checks were passed in the names of Christopher E. Butts, Tony D.S. Baker, Louis F. Taylor, Roger Canada, Joanna Shipp, Antoine L. Thompson, Meredith C. Hodge, and Cynthia Dudley. The State wished to introduce this evidence to demonstrate that the appellant was part of a larger forgery scheme throughout the greater Columbus, Ohio area.
 {¶ 7} Appellant responded noting that the counterfeit checks the State sought to introduce were not contained in the Indictment or the Bill of Particulars. The information *Page 4 
further encompassed individuals not named in either the Indictment or Bill of Particulars. Appellant requested additional time to review and prepare for the new evidence. On July 9, 2007, the trial court denied appellant's request for a continuance.
 {¶ 8} On July 10, 2007, the trial court in a hearing prior to the start of trial granted the State of Ohio's request to use the requested evidence. The trial court determined that with a limiting instruction the evidence of the counterfeit checks passed on the accounts of Quality Employee Management and Cafe Brioso that were not included in the Indictment or Bill of Particulars were admissible. The trial court again denied appellant's motion to continue to allow time to prepare for the new evidence.
 {¶ 9} On July 12, 2007, the Jury returned guilty verdicts on all fifteen (15) counts against appellant. The trial court deferred sentencing and ordered a pre-sentence investigation report. On August 21, 2007 the trial court sentenced appellant to terms of imprisonment of six (6) months as to each of the seven (7) counts of Complicity to Forgery, to terms of imprisonment of six (6) months as to each of the five (5) counts of Forgery, to a term of imprisonment of twelve (12) months as to the count of Carrying a Concealed Weapon, to a term of imprisonment of two (2) years as to the count of Having a Weapon Under Disability, and to a term of imprisonment of seven (7) years as to the count of Engaging in a Pattern of Corrupt Activity. The trial court then ordered the sentences in counts one (1) through twelve (12) to be served concurrently, with the sentences in counts fourteen (14) and fifteen (15) to run consecutively to the other counts. This resulted in a total term of incarceration of nine (9) years and six (6) months.
 {¶ 10} It is from these verdicts and sentences the appellant appeals raising the following three assignments of error: *Page 5 
 {¶ 11} "I. THE TRIAL COURT VIOLATED THE APPELLANT'S RIGHT TO KNOW THE NATURE AND CAUSE OF ACTION AGAINST HIM WHEN IT PERMITTED THE STATE OF OHIO TO PRESENT EVIDENCE OF COUNTERFEIT CHECKS NOT SET FORTH IN THE INDICTMENT OR BILL OF PARTICULARS TO PROVE AN ELEMENT OF THE OFFENSE.
 {¶ 12} "II. THE EVIDENCE AT TRIAL WAS INSUFFICIENT TO SUSTAIN THE CONVICTIONS FOR CARRYING A CONCEALED WEAPON AND HAVING A WEAPON WHILE UNDER DISABILITY.
 {¶ 13} "III. THE TRIAL COURT'S IMPOSITION OF CONSECUTIVE SENTENCES UPON APPELLANT IS CONTRARY TO LAW."
 I. {¶ 14} In his first assignment of error, appellant argues that the prosecution did not give him proper notice in Count Fifteen of the indictment of the predicate acts of corrupt activity it would rely upon to prove that appellant engaged in a pattern of corrupt activity. Appellant argues that the failure of the Indictment and Bill of Particulars to set forth the complete scope of the criminal enterprise underlying the corrupt activity count in the indictment deprived him of due process of law.
 {¶ 15} The prosecution contends that appellant was on notice. The State argues that appellant was aware it intended to present the Forgery and Complicity to Forgery conduct set forth in Counts One through Twelve of the Indictment as "predicate acts." Those predicate acts supported the charge that the appellant engaged in a pattern of corrupt activity in violation of R.C. 2923.32(A) (1) as set forth in Count Fifteen of the Indictment. Further, in the Notice of Intention to Use 404(B) Evidence filed July 6, 2007, *Page 6 
appellant was notified that the State intended to present evidence of checks being cashed by individuals not named in Count Fifteen of the Indictment, not as predicate offenses, but rather, in order to prove the existence and the extent of the "criminal enterprise."
 {¶ 16} R.C. 2923.32(A) (1) prohibits "engaging in a pattern of corrupt activity" and states that "[n]o person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity * * *." The offense is further defined in R.C. 2923.31, which states in pertinent part:
 {¶ 17} "(C) `Enterprise' includes any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity. "Enterprise" includes illicit as well as licit enterprises.
 {¶ 18} "* * *
 {¶ 19} "(E) `Pattern of corrupt activity' means two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event. *
 {¶ 20} "* * *
 {¶ 21} "(I) `Corrupt activity' means engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in any of the following: * * * any violation of section * * * 2925.03 * * * of the Revised Code * * * that is a felony of the first, second, third or fourth degree * * * when the *Page 7 
proceeds of the violation * * * or the value of the contraband * * * possessed, sold or purchased in the violation exceeds five hundred dollars, or any combination of violations * * * when the * * * value of the contraband * * * possessed, sold, or purchased in the combination of violations exceeds five hundred dollars."
 {¶ 22} The indictment of appellant in the case at bar listed five counts of Forgery in violation of R.C. 2913.31(A) (3) and seven counts of Complicity to Forgery in violation of R.C. 2923.03(A)(2) as the predicate offenses for the Pattern of Corrupt Activity charge. The indictment further alleged that appellant and four named individuals comprised the criminal enterprise.
 {¶ 23} In order to establish that a defendant engaged in a pattern of corrupt activity, the state must show that the defendant was "associated with" an "enterprise." Thus, "merely committing successive or related crimes is not sufficient to rise to the level of a RICO violation."State v. Schlosser (1997), 79 Ohio St. 3d 329, 333. Instead, the state has "to prove that each defendant was voluntarily connected to the pattern [of corrupt activity comprising the enterprise], and performed two or more acts in furtherance of it." State v. Sieferd,151 Ohio App. 3d 103, 2002-Ohio-6801, ¶ 43, quoting Schlosser, supra at 334.
 {¶ 24} Appellant's argument is that the scope of the criminal enterprise is an essential element of R.C. 2923.32(A) (1) which must be specifically set forth in the Indictment and Bill of Particulars. We find that we need not answer that question. In the case at bar appellant was sufficiently apprised of the charges, and because he has not demonstrated that he was misled or prejudiced thereby, we cannot find that any error related thereto was outcome-determinative. *Page 8 
 {¶ 25} "A trial court has broad discretion in determining whether to admit or exclude evidence. Absent an abuse of discretion that materially prejudices a party, the trial court's decision will stand."Krischbaum v. Dillon (1991), 58 Ohio St.3d 58, 66, 567 N.E.2d 1291
(citations omitted). A trial court abuses its discretion when it makes a decision that is unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St. 3d 217, 219, 450 N.E.2d 1140
(citations omitted). In applying the abuse of discretion standard, an appellate court is not free to substitute its own judgment for that of the trial court. Berk v. Matthews (1990), 53 Ohio St.3d 161, 169,559 N.E.2d 1301 (citations omitted).
 {¶ 26} In State v. Brown (1992), 65 Ohio St. 3d 483, 605 N.E. 2d 46, the court set forth the following standard: "In making a Crim. R. 52(A) harmless error analysis, any error will be deemed harmless if it did not affect the accused's `substantial rights.' Otherwise stated, the accused has a constitutional guarantee to a trial free from prejudicial error, not necessarily one free of all error. Before constitutional error can be considered harmless, we must be able to `declare a belief that it was harmless beyond a reasonable doubt.' Chapman, supra, 386 U.S. at 24,87 S.Ct. at 828, 17 L.Ed.2d at 711. Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal.State v. Lytle (1976), 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623, paragraph three of the syllabus, vacated on other grounds in (1978),438 U.S. 910, 98 S. Ct. 3135, 57 L.Ed.2d 1154." Id. at 485,605 N.E. 2d at 46.
 {¶ 27} The State is not required to provide the names of every co-conspirator. "A defendant may be indicted and convicted despite the names of his co-conspirators *Page 9 
remaining unknown, as long as the government presents evidence to establish an agreement between two or more persons, a prerequisite to obtaining a conspiracy conviction. Rogers v. United States,340 U.S. 367, 375, 71 S.Ct. 438, 443, 95 L.Ed. 344 (1951); United States v.Piccolo, 723 F.2d 1234, 1238-39 (6th Cir. 1983), cert. denied,466 U.S. 970, 104 S.Ct. 2342, 80 L.Ed.2d 817 (1984). As long as the indictment is valid, contains the elements of the offense, and gives notice to the defendant of the charges against him, it is not essential that a conspirator know all other conspirators. It is the grand jury's statement of the `existence of the conspiracy agreement rather than the identity of those who agree which places the defendant on notice of the charge he must be prepared to meet. Piccolo, 723 F.2d at 1239,quoting United States v. Davis, 679 F.2d 845, 851 (11th Cir. 1982)."United States v. Rey (6th Cir. 1991), 923 F.2d 1217,1222-1223. [Internal quotation marks omitted).
 {¶ 28} The parties agree that in this case appellant was notified four days before trial of the State's intention to use the disputed evidence. Additionally, appellant was given notice of twelve predicate acts because they were separately charged in the indictment. Therefore, appellant had notice of at least two predicate acts that would support the corrupt activity charge. R.C. 2923.31(E). Appellant does not allege that his conviction for those twelve predicate acts was improperly obtained in violation of his constitutional rights. Appellant's involvement in those twelve transactions was sufficient proof of his involvement in an enterprise and a pattern of corrupt activity to support his conviction.
 {¶ 29} Furthermore, the trial court instructed the jury that they could not utilize the disputed evidence as predicate acts or as evidence to support a conviction for the *Page 10 
predicate acts alleged in the indictment. Rather the evidence was solely admissible concerning the issue of the existence of a "criminal enterprise." (3T. at 462). A jury is presumed to follow instructions given it by the court. State v. Henderson (1988), 39 Ohio St. 3d 24,528 N.E. 2d 1237.
 {¶ 30} Because appellant was sufficiently apprised of the charges against him and has not demonstrated that he was misled or prejudiced by the failure to define the entire scope of the criminal enterprise in the indictment, we cannot find that but for the alleged error the outcome of the trial clearly would have been otherwise.
 {¶ 31} Accordingly, appellant's first assignment of error is overruled.
 II. {¶ 32} In his second assignment of error, appellant contends that there was insufficient evidence to support his convictions for carrying a concealed weapon and having a weapon while under a disability. We disagree.
 {¶ 33} The Ohio Supreme Court recently addressed the standard of review for a criminal manifest weight and sufficiency of the evidence challenge, as follows:
 {¶ 34} "The criminal manifest-weight-of-the-evidence standard was explained in State v. Thompkins (1997), 78 Ohio St.3d 380,678 N.E. 2d 541. In Thompkins, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. Id. at 386,678 N.E. 2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. Id. at 386-387, 678 N.E. 2d 541. In other words, a reviewing court asks whose evidence is *Page 11 
more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. Id. at 387, 678 N.E. 2d 541. `When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony.' Id. at 387, 678 N.E. 2d 541, citing Tibbs v. Florida (1982), 457 U.S. 31, 42,102 S.Ct. 2211, 72 L.Ed. 2d 652.
 {¶ 35} "Both C.E. Morris Co., 54 Ohio St.2d 279, 8 O.O.3d 261,376 N.E.2d 578, and Thompkins instruct that the fact-finder should be afforded great deference. However, the standard in C.E. Morris Co. tends to merge the concepts of weight and sufficiency. See State v. Maple
(Apr. 2, 2002), 4th Dist. No. 01CA2605, 2002 WL 507530, fn. 1; State v.Morrison (Sept. 20, 2001), 10th Dist. No. 01AP-66, 001 WL 1098086. Thus, a judgment supported by "some competent, credible evidence going to all the essential elements of the case" must be affirmed. C.E. MorrisCo. Conversely, under Thompkins, even though there may be sufficient evidence to support a conviction, a reviewing court can still reweigh the evidence and reverse a lower court's holdings. State v.Thompkins, 78 Ohio St. 3d 380, 678 N.E.2d 541. Thus, the civil-manifest-weight-of-the-evidence standard affords the lower court more deference then does the criminal standard. See Barkley v.Barkley (1997), 119 Ohio App. 3d 155, 159, 694 N.E. 2d 989." State v.Wilson, 713 Ohio St. 3d 382, 387-88, 2007-Ohio-2202 at ¶ 25-26;865 N.E. 2d 1264, 1269-1270.
 {¶ 36} However, an appellate court may not merely substitute its view for that of the jury, but must find that "the jury clearly lost its way and created such a manifest *Page 12 
miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins, supra, 78 Ohio St. 3d at 387. (Quoting State v. Martin (1983), 20Ohio App.3d 172, 175,485 N.E. 2d 717, 720-721). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id.
 {¶ 37} In State v. Thompkins, supra, the Ohio Supreme Court held "[t]o reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary." Id. at paragraph three of the syllabus. However, to "reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." Id. at paragraph four of the syllabus; State v. Miller (2002), 96 Ohio St. 3d 384,2002-Ohio-4931 at ¶ 38, 775 N.E. 2d 498.
 {¶ 38} In the case at bar, appellant was charged with carrying a concealed weapon in violation of R.C. 2923.12(A), which states: "[n]o person shall knowingly carry or have, concealed on the person's person or concealed ready at hand . . . [a] handgun . . ."
 {¶ 39} Appellant was additionally convicted for having weapons under disability, under R.C. 2923.13(A)(1), which states, "[u]nless relieved from disability * * *, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if * * * [t]he person is a fugitive from justice." In the case at bar, appellant stipulated that he was under a disability at the time of the traffic stop that resulted in the discovery of the firearm. (1T. at 14-16). *Page 13 
 {¶ 40} R.C. 2901.22 defines "knowingly" as follows:
 {¶ 41} "(B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 42} Whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." State v.Huff (2001), 145 Ohio App. 3d 555, 563, 763 N.E.2d 695. (Footnote omitted.) Thus, "[t]he test for whether a defendant acted knowingly is a subjective one, but it is decided on objective criteria." State v.McDaniel (May 1, 1998), Montgomery App. No. 16221, (citing State v.Elliott (1995), 104 Ohio App.3d 812, 663 N.E.2d 412).
 {¶ 43} The only element with which appellant takes exception is whether he can be said to have "possessed" the semi-automatic pistol that was inside the glove compartment of the car he was driving.
 {¶ 44} R.C. 2925.01(K) defines possession as follows: "`Possess' or `possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2901.21 provides the requirements for criminal liability and provides that possession is a "voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for sufficient time to have ended possession." R.C. 2901.21(D) (1). *Page 14 
 {¶ 45} Possession may be actual or constructive. State v. Butler
(1989), 42 Ohio St.3d 174, 176, 538 N.E.2d 98; State v. Haynes (1971),25 Ohio St. 2d 264, 267 N.E. 2d 787; State v. Hankerson (1982),70 Ohio St. 2d 87, 434 N.E. 2d 1362, syllabus. To establish constructive possession, the evidence must prove that the defendant was able to exercise dominion and control over the contraband. State v. Wolery
(1976), 46 Ohio St. 2d 316, 332, 348 N.E.2d 351. Dominion and control may be proven by circumstantial evidence alone. State v. Trembly,137 Ohio App.3d 134, 738 N.E.2d 93. Circumstantial evidence that the defendant was located in very close proximity to the contraband may show constructive possession. State v. Butler, supra; State v. Barr (1993),86 Ohio App.3d 227, 235, 620 N.E.2d 242, 247-248; State v. Morales, 5th Dist. No. 2004 CA 68, 2005-Ohio-4714 at ¶ 50;State v. Moses, 5th Dist. No. 2003CA00384, 2004-Ohio-4943
at ¶ 9. Ownership of the contraband need not be established in order to find constructive possession. State v. Smith, 9th Dist. No. 20885, 2002-Ohio-3034, at ¶ 13, citing State v. Mann, (1993)93 Ohio App.3d 301, 308, 638 N.E.2d 585. Furthermore, possession may be individual or joint. Wolery, 46 Ohio St. 2d at 332, 348 N.E. 2d 351. Multiple individuals may constructively possess a particular weapon simultaneously. State v. Pitts, 4th Dist. No. 99 CA 2675, 2000-Ohio-1986. The Supreme Court has held that knowledge of illegal goods on one's property is sufficient to show constructive possession.State v. Hankerson (1982), 70 Ohio St.2d 87, 91, 434 N.E. 2d 1362, 1365, certiorari denied (1982), 459 U.S. 870, 103 S.Ct. 155, 74 L.Ed.2d 130.
 {¶ 46} If the State relies on circumstantial evidence to prove an essential element of an offense, it is not necessary for "`such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction."' State v. Jenks *Page 15 
(1991), 61 Ohio St.3d 259, 272, 574 N.E.2d 492 at paragraph one of the syllabus. "`Circumstantial evidence and direct evidence inherently possess the same probative value [.]"' Jenks, 61 Ohio St .3d at paragraph one of the syllabus. Furthermore, "`[s]ince circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that i[t] weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt."' Jenks,61 Ohio St.3d at 272, 574 N.E.2d 492. While inferences cannot be based on inferences, a number of conclusions can result from the same set of facts. State v.Lott (1990), 51 Ohio St.3d 160, 168, 555 N.E.2d 293, citing Hurt v.Charles J. Rogers Transp. Co. (1955), 164 Ohio St. 329, 331,130 N.E.2d 820. Moreover, a series of facts and circumstances can be employed by a jury as the basis for its ultimate conclusions in a case. Lott,51 Ohio St. 3d at 168, 555 N.E.2d 293, citing Hurt, 164 Ohio St. at 331,130 N.E. 2d 820.
 {¶ 47} In Ulster County Court v. Allen (1979), 442 U. S. 140,99 S.Ct. 2213, the United States Supreme Court upheld a statute which provided that the presence in an automobile, other than a public one, of a firearm "is presumptive evidence of its possession by all persons occupying such automobile at the time except (a) where the firearm is found upon the person of an occupant, (b) where the automobile is being operated for hire by a licensed operator or (c) if the weapon is a handgun and one of the occupants, not present under duress, has a license to have a handgun." Id. at 442 U. S. 142-143, 99 S.Ct. 2217. The Court noted that the presumption was not a mandatory; rather it was a permissive inference available only in certain circumstances. Further, the jury could ignore the presumption even if there was no affirmative proof offered in *Page 16 
rebuttal by the accused. Id. at 160-162, 99 S.Ct. at 2226-2227. Finally, the trial judge in Allen explained, "that possession could be actual or constructive, but that constructive possession could not exist without the intent and ability to exercise control or dominion over the weapons." Id. at 161, 99 S.Ct. at 2226.
 {¶ 48} Upon a careful review of the record and upon viewing the direct and circumstantial evidence in the light most favorable to the prosecution, this Court cannot conclude that the jury lost its way and created a manifest miscarriage of justice when it found appellant guilty of the offenses of carrying a concealed weapon and having a weapon while under a disability.
 {¶ 49} Appellant was driving the car in which the weapon was found. When the officer asked whether there were any weapons inside the vehicle appellant replied, "I'm not going to lie to you, there's a gun in the glove compartment . . ." (2T. at 177; 231).
 {¶ 50} Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crime of carrying a concealed weapon and having a weapon while under a disability.
 {¶ 51} Appellant argues he was unaware that the gun was in the vehicle and further that a co-defendant had supplied the car. He further argues that the same co-defendant was seated in the passenger seat of the car at the time of the traffic stop and, therefore, that person had closer access to the gun. However, the jury was free to accept or reject any and all of the evidence offered by the appellant and assess the witness's credibility. Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true.State v. Raver, Franklin App. No. 02AP-604, *Page 17 
2003-Ohio-958, at ¶ 21, citing State v. Antill (1964), 176 Ohio St. 61,67, 197 N.E.2d 548.; State v. Burke, Franklin App. No. 02AP-1238, 2003-Ohio-2889, citing State v. Caldwell (1992), 79 Ohio App.3d 667,607 N.E.2d 1096. "A fundamental premise of our criminal trial system is that `the jury is the lie detector.' United States v. Barnard, 490 F.2d 907,912 (C.A.9 1973) (emphasis added), cert. denied, 416 U.S. 959,94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Determining the weight and credibility of witness testimony, therefore, has long been held to be the `part of every case [that] belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.' Aetna Life Ins. Co. v. Ward, 140 U.S. 76, 88,11 S.Ct. 720, 724-725, 35 L.Ed. 371 (1891)". United States v. Scheffer
(1997), 523 U.S. 303, 313, 118 S.Ct. 1261, 1266-1267.
 {¶ 52} Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. State v. Jenks (1991), 61 Ohio St. 3d 259, 574 N.E. 2d 492.
 {¶ 53} We hold, therefore, that the State met its burden of production regarding each element of the crime of carrying a concealed weapon and having a weapon while under a disability. Accordingly, there was sufficient evidence to support appellant's convictions.
 {¶ 54} We conclude the trier of fact, in resolving the conflicts in the evidence, did not create a manifest injustice to require a new trial.
 {¶ 55} Accordingly, appellant's second assignment of error is overruled. *Page 18 
 III. {¶ 56} In his third assignment of error, appellant contends he was improperly sentenced to consecutive sentences that exceed the maximum term allowed for the most serious offense of which he was convicted. Appellant notes that the most serious charges that he was convicted of is a felony of the second degree and that the maximum sentence for a felony of the second degree is eight years in prison.
 {¶ 57} R.C. 2953.08(C) states as follows: "In addition to the right to appeal a sentence granted under division (A) or (B) of this section, a defendant who is convicted of or pleads guilty to a felony may seek leave to appeal a sentence imposed upon the defendant on the basis that the sentencing judge has imposed consecutive sentences under division (E)(3) or (4) of section 2929.14 of the Revised Code and that the consecutive sentences exceed the maximum prison term allowed by division (A) of that section for the most serious offense of which the defendant was convicted. * * *."
 {¶ 58} Rule 5 of the Ohio Rules of Appellate Procedure states in part:
 {¶ 59} "(D) (2) Leave to appeal consecutive sentences incorporated into appeal as of right.
 {¶ 60} "When a criminal defendant has filed a notice of appeal pursuant to App. R. 4, the defendant may elect to incorporate in defendant's initial appellate brief an assignment of error pursuant to R.C. 2953.08(C), and this assignment of error shall be deemed to constitute a timely motion for leave to appeal pursuant to R.C. 2953.08(C)."
 {¶ 61} Pursuant to App. R. 5(D), appellant has utilized this assignment of error as his motion for leave to appeal which we will sustain. *Page 19 
 {¶ 62} This Court has recognized that "* * * the right to appeal a sentence under R.C. 2953.08(C) does not mean that consecutive sentences for multiple convictions may not exceed the maximum sentence allowed for the most serious conviction." See State v. Beverly, Delaware App. No. 03 CAA 02011, 2003-Ohio-6777, paragraph 17, quoting State v. Haines (Oct. 29, 1998), Franklin App. No. 98AP-195. "To so construe the statute would demean the sentencing process to the point that it would permit one person to receive a maximum sentence for committing one felony while allowing another person to receive only the same maximum sentence for committing one hundred similar felonies. While the right to appeal may be granted if the conditions of R.C. 2953.08(C) are met, such right to appeal does not limit the court's ability to impose consecutive sentences." State v. Haines, supra.
 {¶ 63} Our review of the record in the case at bar leads us to conclude that the trial court made the proper findings to justify the sentences imposed and properly stated its reasons for those findings. The sentences were supported by clear and convincing evidence and were not contrary to law.
 {¶ 64} Appellant first argues that the imposition of consecutive sentences in his case was manifestly unjust because other similarly situated individuals received less severe punishment. On appeal, appellant presents a "list" of fourteen individuals he suggests have been sentenced for violations of R.C. 2923.32 in Delaware County. [See, Appellant's Brief at Appendix A]. Appellant does not provide case numbers; nor does he provide certified copies of the sentencing entries.
 {¶ 65} As the "list" was not considered by the trial court, appellant alludes to matters not contained in the trial court record. In State v.Hooks (2001), *Page 20 92 Ohio St.3d 83, 2001-Ohio-150, 748 N.E.2d 528, the Court noted: "[h]owever, a reviewing court cannot add matter to the record before it that was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter. See, State v. Ishmail (1978),54 Ohio St. 2d 402, 8 O.O.3d 405, 377 N.E.2d 500."
 {¶ 66} In addition appellant's argument that the imposition of consecutive sentences in his case was manifestly unjust because other similarly situated individuals received less severe punishment was not presented at the trial court level. "The general rule is that `an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called, but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.' State v. Childs (1968),14 Ohio St.2d 56 [43 O.O.2d 119], 236 N.E.2d 545, paragraph three of the syllabus; State v. Glaros (1960), 170 Ohio St. 471 [11 O.O.2d 215],166 N.E.2d 379, paragraph one of the syllabus; State v. Lancaster (1971),25 Ohio St.2d 83 [54 O.O.2d 222], 267 N.E.2d 291, paragraph one of the syllabus; State v. Williams (1977), 51 Ohio St.2d 112, 117
[5 O.O.3d 98], 364 N.E.2d 1364. Likewise, `[constitutional rights may be lost as finally as any others by a failure to assert them at the proper time.'State v. Childs, supra, 14 Ohio St.2d at 62 [43 O.O.2d 119],236 N.E.2d 545, citing State v. Davis (1964), 1 Ohio St.2d 28 [30 O.O.2d 16],203 N.E.2d 357; State, ex rel. Specht, v. Bd. of Edn. (1981),66 Ohio St.2d 178, 182 [20 O.O.3d 191], 420 N.E.2d 1004, citing Clarington v.Althar (1930), 122 Ohio St. 608, 174 N.E. 251, and Toledo v. Gfell
(1958), 107 Ohio App. 93, 95 [7 O.O.2d 437], 156 N.E.2d 752. [Footnote omitted.] Accordingly, the question of whether the consecutive sentences in *Page 21 
his case was manifestly unjust because other similarly situated individuals received less severe punishment should have been presented to the trial court.
 {¶ 67} Assuming arguendo that the appellant had presented evidence of the fourteen individuals who had been sentenced for violations of R.C. 2923.32 to the trial court, our decision would not necessarily change. Appellant cannot show his sentence is inconsistent with sentences imposed upon other criminals who committed similar crimes merely by presenting cases in which similar crimes received different sentences.State v. Kingrey, Delaware App. No. 04-CAA-04029, 2004-Ohio-4605.
 {¶ 68} Appellant next argues that the sentence is contrary to law and not supported by the record.
 {¶ 69} Under Ohio law, judicial fact-finding is no longer required before a court imposes consecutive or maximum prison terms. SeeState v. Foster, 109 Ohio St. 3d 1, 845 N.E.2d 470, 2006-Ohio-856;State v. Mathis, 109 Ohio St.3d 54, 846 N.E.2d 1, 2006-Ohio-855. Instead, the trial court is vested with discretion to impose a prison term within the statutory range. See Mathis, at ¶ 36. In exercising its discretion, the trial court must "carefully consider the statutes that apply to every felony case [including] R.C. 2929.11, which specifies the purposes of sentencing, and R.C. 2929.12, which provides guidance in considering factors relating to the seriousness of the offense and recidivism of the offender [and] statutes that are specific to the case itself." Id. at ¶ 37. Thus, post-Foster, "there is no mandate for judicial fact-finding in the general guidance statutes. The court is merely to `consider' the statutory factors." Foster at ¶ 42. State v. Rutter, 5th Dist. No. 2006-CA-0025, 2006-Ohio-4061;State v. Delong, 4th Dist. No. 05CA815, 2006-Ohio-2753
at ¶ 7-8. *Page 22 
 {¶ 70} Pursuant to the express language of R.C. 2929.13(D), the court need not make any findings of fact concerning the purposes and principles of sentencing under section 2929.11 of the Revised Code when sentencing an offender for a felony of the first or second degree because the legislature has determined that a prison term is necessary to comply with the purposes and principles of sentencing. State v.Firouzmandi, Licking App. No. 2006-CA-41, 2006-Ohio-5823. The statute requires findings of fact only when the trial court overcomes the presumption of imprisonment and sentences the offender to community control sanctions. See, State v. Mathis, 109 Ohio St.3d 54,846 N.E.2d 1, 2006-Ohio-855 at ¶ 27. ("Judicial findings must be provided only for downward departures, such as when a court refuses to impose the presumptive prison term under R.C. 2929.13(D) or when a court grants a judicial release. See R.C. 2929.20(H)").
 {¶ 71} There is no requirement in R.C. 2929.12 that the trial court states on the record that it has considered the statutory criteria concerning seriousness and recidivism or even discussed them. State v.Polick (1995), 101 Ohio App.3d 428, 431; State v. Gant, Mahoning App. No. 04 MA 252, 2006-Ohio-1469, at ¶ 60 (nothing in R.C. 2929.12 or the decisions of the Ohio Supreme Court imposes any duty on the trial court to set forth its findings), citing State v. Cyrus (1992),63 Ohio St.3d 164, 166; State v. Hughes, Wood App. No. WD-05-024, 2005-Ohio-6405, at ¶ 10 (trial court was not required to address each R.C. 2929.12 factor individually and make a finding as to whether it was applicable in this case), State v. Woods, 5th Dist. No. 05 CA 46,2006-Ohio-1342 at ¶ 19 (". . . R.C. 2929.12 does not require specific language or specific *Page 23 
findings on the record in order to show that the trial court considered the applicable seriousness and recidivism factors"). (Citations omitted).
 {¶ 72} Where the record adequately justifies the sentence imposed, the court need not recite its reasons. State v. Middleton (Jan. 15, 1987), 8th Dist. No. 51545. In other words, an appellate court may review the record to determine whether the trial court failed to consider the appropriate sentencing factors. State v. Firouzmandi, supra at ¶ 52.
 {¶ 73} In the case at bar, the trial court considered the pre-sentence investigation report. (4T. at 503). Appellant has at least five previous felony convictions in the State of Ohio, as well as convictions in the State of Mississippi. (Id.). Appellant was under a community control sanction at the time the offenses in this case were committed. (Id. at 513). The trial court noted that the appellant was part of an organized criminal enterprise in which he acted as a recruiter bringing other individuals into the criminal activity. (Id. at 506-509; 513). Approximately $17,000.000 to $18,000.00 in monetary damage was done as a result of the extensive check writing enterprise involved in appellant's case. (Id. at 506).
 {¶ 74} It appears to this Court that the trial court's statements at the sentencing hearing were guided by the overriding purposes of felony sentencing to protect the public from future crime by the offender and others and to punish the offender. R.C. 2929.11. Based on the transcript of the sentencing hearing and the subsequent judgment entry, this Court cannot find that the trial court acted unreasonably, arbitrarily, or unconscionably, or that the trial court violated appellant's rights to due process under the Ohio and United States Constitutions in sentencing appellant to consecutive *Page 24 
sentences of incarceration that exceed the maximum term allowed for the most serious offense of which he was convicted. There is no evidence in the record that the judge acted unreasonably by, for example, selecting the sentence arbitrarily, basing the sentence on impermissible factors, failing to consider pertinent factors, or giving an unreasonable amount of weight to any pertinent factor. We find nothing in the record of appellant's case to suggest that his sentence was based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment. The sentences were supported by clear and convincing evidence and were not contrary to law.
 {¶ 75} Appellant's third assignment of error is overruled.
 {¶ 76} The judgment of the Court of Common Pleas, Delaware County, Ohio is hereby affirmed.
Gwin, P.J., Wise, J., and Delaney, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, The judgment of the Court of Common Pleas, Delaware County, Ohio is hereby affirmed. Costs to appellant.
[1] As appellant does not challenge his convictions for Complicity to Forgery and Forgery, only a summary rendition of the facts concerning those allegations will be detailed. *Page 1