[Cite as *State v. Colston*, 2020-Ohio-3879.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Patricia A. Delaney, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin,, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. CT2019-0076 |
| ANTHONY R. COLSTON, JR. | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:    Criminal appeal from the Muskingum County Court of Common Pleas, Case No. CR2017-0026

JUDGMENT:    Affirmed

DATE OF JUDGMENT ENTRY:    July 27, 2020

APPEARANCES:

For Plaintiff-Appellee

D. MICHAEL HADDOX
Prosecuting Attorney
By: TAYLOR BENNINGTON
Assistant Prosecutor
Muskingum County
27 North Fifth St., Box 189
Zanesville, OH 43701

For Defendant-Appellant

JAMES A. ANZELMO
446 Howland Drive
Gahanna, OH 43230

*Gwin, P.J.*

{¶1} Defendant-appellant Anthony R. Colston, Jr., aka Dough ["Colston] appeals his convictions and sentences after a jury trial in the Muskingum County Court of Common Pleas.

*Facts and Procedural History*

{¶2} The Muskingum County Sheriff's Department used a confidential informant to set up controlled drug deals on September 6 and 15, 2016.

{¶3} Detective Matt Wilhite from the Muskingum County Sheriff's Office and the Central Ohio Drug Enforcement Task Force testified that his confidential informant ["CI"] spoke to him about meeting an individual named Mario Martinez Claytor, a.k.a. "Casino" while the pair were incarcerated in the Muskingum County Jail. 1T. at 174[1]. Detective Wilhite had knowledge of Claytor and had been investigating him since 2005. Detective Wilhite asked the CI to make contact with Claytor and arrange to make some controlled drug buys from him. 1T. at 174.

{¶4} The CI began by sending a "friend" request to Claytor's Facebook page. Within minutes, Claytor responded with a telephone number and a request for the CI to contact him. 1T. at 175. While at the sheriff's office, Detective Wilhite monitored and recorded the telephone call between the CI and Claytor. 1T. at 176. (State's Exhibit B2). Detective Wilhite verified that Claytor had been in the Muskingum County Jail at the time the CI was in the jail. 1T. at 178. He further verified the telephone number and address of Claytor. 1T. at 179.

---

[1] For clarity sake, the Transcript of the jury trial will be referred to by volume and page number as "T."

{¶5} On September 9, 2016, the CI informed Detective Wilhite that he, the CI, could purchase one ounce of cocaine from Claytor for $1,225. Detective Wilhite and the CI met to set up a controlled buy from Claytor. 1T. at 179. The CI was given the buy money and an undercover police vehicle. The CI made a telephone call to Claytor that the detective monitored and recorded. 1T. at 180. (State's Exhibit C1). The CI was equipped with audio and visual recording devices and given a camera. 1T. at 181. Undercover detectives from the Muskingum County Sheriff's Office followed the CI to his home which was the agreed meeting place for the transaction. The CI remained on the porch in view of the undercover officers.

{¶6} The CI received a telephone call and gave the caller directions to the CI's home. 1T. at 183. A short time later, a white Chrysler 300 with Pennsylvania license plates pulled up to the house. The CI left the porch and got inside the backseat of the car. The entire time, detectives were listening and recording the events in real time. (State's Exhibit D17). The CI initially tells the driver of the car that he, the CI, forgot his scales. 1T. at 188. The CI can be seen returning to the car with scales in hand. Inside the car was Colston. Colston handed the CI cocaine and the CI gave Colson $1,225. 1T. at 189.

{¶7} Detective Wilhite produced still pictures made from the video of the transaction. Among the pictures are pictures of Colston's face, and the tattoo on his right arm. State's Exhibit D3, D4, D6, D7, D8, D9, D10, and D11. State's Exhibit D12 is a picture of a hand with what appears to be a bag of cocaine. 1T. at 194-195. State's Exhibit D13 is a picture of a hand, a bag of cocaine, and money. State's Exhibits D14, D15 and D16 show Colston's face. 1T. at 195. Approximately 27 grams of cocaine was

recovered from the CI from the transaction that took place on September 6, 2016. 1T. at 186. State's Exhibit E1.

{¶8}     Detective Wilhite was able to find booking photographs and tattoo records from law enforcement databases that matched those he saw in the video. The records identified Colston as the driver of the white Chrysler 300.  Upon arriving at the residence listed for Colston from the dataset records, Detective Wilhite found the white Chrysler 300 parked in front of the residence. 1T. at 196.

{¶9}     A second controlled buy took place on September 15, 2016. 1T. at 198. The CI informed Detective Wilhite that the CI could purchase four ounces of cocaine from Mario Claytor. The CI and Detective Wilhite met at a prearranged meeting pace.  The CI was given $4,500 in buy money and outfitted with visual and audio recording devices. The buy was again to take place at the CI's residence. Surveillance was set up around the residence by detectives from the Muskingum County Sheriff's Office. After waiting for over one hour the CI received a telephone call from Claytor discussing the terms of the deal. 1T. at 204.  Approximately ten minutes later, Colston arrived driving a silver Toyota. 1T. at 205. The CI got into the front passenger seat. Claytor telephoned the CI while the CI was inside the car.   Apparently, there was a discrepancy in the amount of money the CI was to pay for the cocaine.  This was resolved by the CI agreeing to pay an additional $300 at a later time. 1T. at 205. Colston gave the CI four ounces of cocaine in exchange for receiving $4,500.  1T. at 205. Detective Wilhite was able to pull up next to the silver Toyota while the cars were stopped at a traffic light. Detective Wilhite observed Colston driving the silver Toyota. 1T. at 206.  No one else was inside the Toyota.

{¶10} Colston is seen in the video handing cocaine to the CI and the CI is seen on the video giving Colston $4,500. 1T. at 207. State's Exhibit G1. Stills taken from the video of Colston's face and tattoos were received into evidence. State's Exhibit's H8 – H13. 1T. at 211- 213.

{¶11} At trial, upon the request of the prosecution, and over the objection of Colston's trial counsel, the trial judge had Colston show the jury a tattoo he had on his arm and hands. 2T. at 241-242; 267.

{¶12} In January 2017 multiple search and arrest warrants were issued. 1T. at 219. Detective Wilhite testified that the identity of the CI was determined by those involved by the end of that day. 1T. at 219-220. Colston was arrested in the state of Alabama nearly one year later. He was extradited to Ohio.

{¶13} Colston was indicted with one count of conspiracy to trafficking in drugs, a first degree felony, in violation of R.C. 2923.03, and one count of engaging in a pattern of corrupt activity, a first degree felony, in violation of R.C. 2923.32. The charges contained major drug offender specifications under R.C. 2941.141.

{¶14} Before jury deliberations, the trial court instructed the jury that it heard testimony that Colston fled the state and that this conduct can evince a consciousness of guilt. 2T. at 397. Trial counsel objected to the instruction arguing there was no testimony that Colston left the state under an awareness that he was being charged with a crime. 2T. at 370.

{¶15} The jury found Colston guilty of conspiracy to drug trafficking as well as engaging in a pattern of corrupt activity. The jury also found that the offenses pertained to trafficking cocaine in an amount greater than 100 grams. The prosecution dismissed

the major drug offender specification attached to the trafficking charge, but kept the specification attached to the engaging in a pattern of corrupt activity charge. The issue of whether Colston was a major drug offender was for the trial court to make, and it found that Colston was a major drug offender.  The trial court therefore sentenced Colston to a mandatory term of seven years on the conspiracy to trafficking count and a mandatory term of eleven years on the engaging in a pattern of corrupt activity count.  The court ordered the sentences to be served consecutively for an aggregate prison term of 18 years.

*Assignments of Error*

{¶16}  Colston raises eight Assignments of Error,

{¶17}  "I. THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING COLSTON'S MOTION FOR A CONTINUANCE, IN VIOLATION OF COLSTON'S DUE PROCESS RIGHTS PURSUANT TO THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

{¶18}  "II. THE TRIAL COURT ERRED BY REQUIRING COLSTON TO DISPLAY HIS TATTOO TO THE JURY, IN VIOLATION OF HIS RIGHT AGAINST SELF-INCRIMINATION GUARANTEED BY THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

{¶19}  "III. THE TRIAL COURT PLAINLY ERRED BY FAILING TO INSTRUCT THE JURY THAT IT MUST UNANIMOUSLY AGREE ON THE SAME SPECIFIC INCIDENT OF COMPLICITY [SIC.][2] TO DRUG TRAFFICKING AND ENGAGING IN A

---

[2] Colston incorrectly refers to his conviction in Count 1 of the Indictment as "complicity"  when in fact Colston was indicted and convicted of conspiracy to trafficking in cocaine pursuant to R.C. 2923.01. *See*, Appellant's Brief at 6.

PATTERN OF CORRUPT ACTIVITY, EACH ALLEGED IN SINGLE COUNTS IN THE INDICTMENT AGAINST COLSTON, IN VIOLATION OF HIS RIGHTS TO DUE PROCESS OF LAW, A FAIR TRIAL, JURY UNANIMITY, AND THE DOUBLE JEOPARDY PROTECTIONS PURSUANT TO THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION.

{¶20} "IV. THE TRIAL COURT ERRED BY INSTRUCTING THE JURY THAT IT COULD CONSIDER THAT COLSTON FLED THE STATE AS EVIDENCE OF A CONSCIOUSNESS OF GUILT.

{¶21} "V. COLSTON'S CONVICTIONS ARE BASED ON INSUFFICIENT EVIDENCE, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 10 & 16, ARTICLE I OF THE OHIO CONSTITUTION.

{¶22} "VI. COLSTON'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 10 & 16, ARTICLE I OF THE OHIO CONSTITUTION.

{¶23} "VII. THE TRIAL COURT LACKED AUTHORITY TO FIND COLSTON A MAJOR DRUG OFFENDER, PURSUANT TO THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

{¶24} "VIII. THE TRIAL COURT UNLAWFULLY ORDERED COLSTON TO SERVE CONSECUTIVE SENTENCES, IN VIOLATION OF HIS RIGHTS TO DUE PROCESS, GUARANTEED BY SECTION 10, ARTICLE I OF THE OHIO

CONSTITUTION AND THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

I.

{¶25}  In his First Assignment of Error, Colston contends that the trial court abused its discretion and violated his right to present a meaningful defense by denying his fifth motion to continue the trial date that he filed on February 27, 2019.

**1.1 Standard of Appellate Review.**

{¶26}  Every criminal defendant has a constitutional right to present a meaningful defense. *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636(1986). Ordinarily a reviewing court analyzes a denial of a continuance in terms of whether the court has abused its discretion. *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921(1964). If, however, the denial of a continuance is directly linked to the deprivation of a specific constitutional right, some courts analyze the denial in terms of whether there has been a denial of due process. *Bennett v. Scroggy*, 793 F.2d 772(6th Cir.1986). A defendant has an absolute right to prepare an adequate defense under the Sixth Amendment of the United States Constitution and a right to due process under the Fifth and Fourteenth Amendments. *United States v. Crossley*, 224 F.3d 847, 854(6th Cir.2000). The United States Supreme Court has recognized that the right to offer the testimony of witnesses and compel their attendance is constitutionally protected. *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019(1967). The Ohio Supreme Court recognized that the right to present a witness to establish a defense is a fundamental element of due process of law. *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 4–5, 511 N.E.2d 1138(1987). A trial court's failure to grant a continuance to enable a

defendant to exercise his constitutionally protected right to offer the testimony of witnesses and compel their attendance may, in some circumstances, constitute a denial of due process. *Mackey v. Dutton*, 217 F.3d 399, 408(6th Cir.2000); *Bennett v. Scroggy*, supra, 793 F.2d at 774. *See also, State v. Wheat*, 5th Dist. No. 2003-CA-00057, 2004–Ohio–2088, ¶16.

**1.2. Issue for Appellate Review:** *Whether the trial court abused its discretion and denied Colston due process of law by failing to grant the February 27, 2019 motion to continue the March 5, 2019 trial date.*

{¶27} On May 14, 2018, Colston's trial counsel filed a notice of appearance and a demand for discovery. (Docket Entries Nos. 5, 6, 7).

{¶28} By Journal Entry filed May 16, 2018, Colston's case was originally scheduled for a jury trial on July 19, 2018. (Docket Entry No. 11).

{¶29} On July 11, 2018, Colston filed a motion for continuance. (Docket Entry No. 14). The trial court granted the request and continued the trial to September 6, 2018. (Docket Entry No. 15).

{¶30} On August 16, 2018, Colston filed a second motion for continuance. (Docket Entry No. 16).

{¶31} On August 27, 2018, Attorney Derek Farmer filed a notice of appearance as co-counsel for Colston and motion to continue trial date. (Docket Entry No. 19).

{¶32} On August 31, 2018, the trial court granted the request and continued the trial until September 18, 2018. (Docket Entry No. 30).

{¶33} On September 13, 2018, a bench warrant was issued for Colston. (Docket Entry No. 42; 45).

{¶34} On September 14, 2018, Colston filed a third motion for continuance of the trial date. (Docket Entry No. 44). Among the reasons given by Colston for requesting the continuance was that he needed time to locate the other person shown in the video footage taken of the CI's home during the drug transactions. *Motion to Continue Trial Date,* Filed Sept. 14, 2018 at 2-3. (Docket No. 45). Counsel for Colston set forth the names of seven individuals that they claimed were necessary to locate and interview. *Motion* at 3.

{¶35} On September 17, 2018, Colston filed a motion to continue. Counsel for Colston informed the trial court that he was scheduled to begin a jury trial in the Franklin County Court of Common Pleas on September 17, 2018. *Motion for Continuance,* filed Sept. 17, 2018. (Docket No. 48).

{¶36} On October 18, 2018, the trial court continued the trial date previously set for September 18, 2018 to December 18, 2018. (Docket Entry No. 58).

{¶37} On December 13, 2018, Colston filed a fourth motion for continuance combined with a Motion to appoint an Investigator, and Motion to Appoint Counsel, or in the alternative, permit Colston's co-counsel to withdraw.(Docket No. 70). The state also filed for a continuance when its witness suffered a medical emergency that week. (Docket Entry No. 73).

{¶38} The trial court granted the motion and the trial was continued until March 5, 2019. Docket No. 77). The trial court granted co-counsel's motion to withdraw and denied Colston's request to appoint an investigator. (Docket No. 75).

{¶39} On February 27, 2019, Colston filed a fifth motion for continuance. (Docket No. 85). Colston had filed a motion to compel the state to provide addresses of the other

individuals seen in the video footage. (1T. at 7). The state responded that it did not possess any addresses and was not intending to call any of the individuals to testify at trial. (1T. at 7; 9-11). The trial court denied the motion noting that the motion to continue was filed four days before trial. (1T. at 8).

{¶40} Among the factors to be considered by the court in determining whether the continuance was properly denied are: (1) the length of the requested delay, (2) whether other continuances had been requested and granted, (3) the convenience or inconvenience to the parties, witnesses, counsel and court, (4) whether the delay was for legitimate reasons or whether it was "dilatory, purposeful or contrived", (5) whether the defendant contributed to the circumstances giving rise to the request, (6) whether denying the continuance will result in an identifiable prejudice to the defendant's case, and (7) the complexity of the case. *Powell v. Collins*, 332 F.3d 376, 396(6th Cir.2003); *State v. Unger*, 67 Ohio St.2d 65, 67–68, 423 N.E.2d 1078, 1080(1981); *State v. Wheat,* 5th Dist. No. 2003-CA-00057, 2004–Ohio–2088, at ¶ 17.

{¶41} In *Wheat, supra*, the appellant argued that the trial court erred when it failed to continue his trial to secure witnesses he had subpoenaed. This court found no abuse of discretion because the request for a continuance did not demonstrate the amount of time necessary to secure the attendance of the witnesses, or the nature of their testimony. 2004–Ohio–2088 at ¶21. *Citing State v. Brooks*, 44 Ohio St.3d 185, 542 N.E.2d 636(1989), we held that because defense counsel failed to proffer what the desired testimony of the absent witnesses would have been and how it was relevant to the defense, we could not find prejudice from the denial of the motion to continue. Id. at ¶ 22–24, 542 N.E.2d 636.

{¶42} "When the reason for a continuance is to secure the attendance of a witness, 'it is incumbent upon the moving party to show that such witnesses would have given substantial favorable evidence and that they were available and willing to testify.'" S*tate v. Komadina*, 9th Dist. No. 02CA008104, 2003–Ohio–1800, ¶32, *quoting State v. Mills*, 5th Dist. No. 01–COA–01444, 2002–Ohio–5556. Because Colston's counsel did not make a timely proffer of any anticipated testimony, the trial court could not have known how or why said testimony was vital to Colston's defense when it denied the continuance. *State v. Snowden*, 49 Ohio App.2d 7, 17, 359 N.E.2d 87(1st Dist. 1976) (not an abuse of discretion to deny continuance due to absence of purportedly "critical defense witness" where no proffer made of witness' anticipated testimony at the time of decision). In the case at bar, the trial court was not told the nature of any witness's testimony or the length of time it would take to produce any witness.

{¶43} Given that the trial court was never specifically advised as to the purported content of any purported witness's testimony, we do not have anything by way of evidence by which to demonstrate that Colston was prejudiced by the failure to present testimony during his trial. Further, the state presented audio and video evidence, still pictures, the testimony of the CI and Detective Wilhite to prove that Colston exchanged cocaine for money. No explanation, facts, or details has been suggested by Colston as to what evidence, facts, or support any of the other individuals seen in the video footage could have provided that would have exculpated Colston. Further Colston had been aware of the names of the individuals from at least September 14, 2018.

{¶44} Colston's First Assignment of Error is overruled.

II.

{¶45}  In his Second Assignment of Error, Colston argues the trial court erred by requiring him to show his tattoos in front of the jury thereby violating his right against self-incrimination.

**2.1 Standard of Appellate Review.**

{¶46}  "[A] trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991).  "'When a court's judgment is based on an erroneous interpretation of the law, an abuse-of-discretion standard is not appropriate.  *See Swartzentruber v. Orrville Grace Brethren Church*, 163 Ohio App.3d 96, 2005-Ohio-4264, 836 N.E.2d 619, ¶ 6; *Huntsman v. Aultman Hosp.*, 5th Dist. No. 2006 CA 00331, 2008-Ohio-2554, 2008 WL 2572598, ¶ 50.'  *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, ¶ 13."  *State v. Fugate*, 117 Ohio St.3d 261, 2008-Ohio-856, 883 N.E.2d 440, ¶6.

{¶47}  Colston frames the evidentiary issue as a violation of a constitutional right. We review de novo evidentiary rulings that implicate the Constitution. *See, State v. McKelton,* 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶97 (Confrontation Clause); *See also*, *United States v. Blackwell*, 459 F.3d 739, 752 (6th Cir. 2006) (noting that the abuse of discretion standard generally applicable to a district court's evidentiary rulings is not at odds with de novo review of constitutional questions because district courts do "not have the discretion to rest [their] evidentiary decisions on incorrect interpretations of the Constitution").

**{¶48}** However, insofar as factual issues must be determined by the trial court as a predicate to resolving the legal question of the privilege against self-incrimination, such factual determinations should be accorded deference. *MA Equip. Leasing I, LLC v. Tilton, 10th Dist.*, 2012-Ohio-4668, 980 N.E.2d 1072, ¶ 18; *Block Communications, Inc. v. Pounds*, 2015-Ohio-2679, 34 N.E.3d 984, ¶ 44; *Hurt v. Liberty Township, Delaware County, OH*, 5th Dist. Delaware No. 17 CAI 05 0031, 2017-Ohio-7820, ¶ 32.

**2.2 Issue for Appellate Review:** *Whether having Colston roll up his right sleeve and display his arm and hand tattoos to the jury violated Colston's right to be free from compelled self-incrimination.*

**{¶49}** During the re-direct of Detective Wilhite, the state requested that Colston, who did not testify during his trial, display his hand and arm tattoos. 2T. at 266-267. The trial judge order Colston to step up toward the jury, roll up his right sleeve and display his tattoos. 2T. at 267. Colston argues that this violated his right against self-incrimination. [Appellant's brief at 5].

**{¶50}** The Fifth Amendment to the United States Constitution provides in part that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. The right against self-incrimination bars only "compelled incriminating communications...that are 'testimonial' in character." *United States v. Hubbell*, 530 U.S. 27, 34, 120 S.Ct. 2037, 147 L.Ed.2d 24 (2000). Put differently, to qualify for protection under the Fifth Amendment, a statement or other communication must be: (1) testimonial; (2) incriminating; and (3) compelled. *Hiibel v. Sixth Judicial Dist. Ct.*, 542 U.S. 177, 189, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004). "The prohibition of compelling a man in a criminal court to be a witness against himself is a prohibition of the use of physical or

moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material." *Schmerber v. California*, 384 U.S. 757, 763, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (*quoting Holt v. United States*, 218 U.S. 245, 252–53, 31 S.Ct. 2, 54 L.Ed. 1021 (1910)).

{¶51} The sole support that Colston's cites to support his contention is *State v. Naylor*, 70 Ohio App.2d 233, 436 N.E.2d 539(9th Dist. 1980). We find *Naylor* to be inapposite because it involved an in-court voice identification which took place in the presence of the jury. The court in *Naylor* noted that Naylor was required to repeat the "emotion-inspiring words used during the commission of the crimes" and that the witnesses merely testified that the voice sounded like the voice of one burglar-rapist but failed to make a positive voice identification. However, in its decision, the court distinguished cases where the voice identification occurs during trial from those where the identification is a pre-trial procedure. The court stated that the latter has been upheld as lawful. *State v. Kidd*, 8thDist. Cuyahoga No. 47281, 1984 WL 5023 (Mar 29, 1984) at *3. This issue was addressed by the United States Supreme Court in *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149(1967). The court ruled that requiring a defendant to speak within hearing distance of witnesses, solely for the purpose of identifying a voice, does not violate the defendant's Fifth Amendment right against self-incrimination.

{¶52} The privilege does not protect a criminal suspect from being compelled to exhibit physical characteristics for inspection. *United States v. Hubbell,* 530 U.S. 27, 34-35, 120 S.Ct. 2037, 147 L.EEd.2d 24(2000). *See, also, United States v. Wade*, 388 U.S. 218, 221-23 (1967) (lineup; voice recording); *Schmerber v. California*, 384 U.S. 757, 760-

65, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (blood-alcohol test); *Holt v. United States,* 218 U.S. 245, 252-53, 31 S.Ct. 2, 54 L.Ed. 21 (1910) (putting on clothing used in crime). For that reason, the Fifth Amendment is not offended where a witness relies on a tattoo to identify a defendant. *United States v. Greer,* 631 F.3d 608, 612(2nd Cir. 2011); *United States v. McCarthy,* 473 F.2d 300, n.3 (2nd Cir. 1972); *United States v. Velasquez,* 881 F.3d 314, 338 (5th Cir. 2018); *State v. McKelton,* 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 195-196; *State v. Buck,* 1st Dist. Hamilton No. C-160320, 2017-Ohio-8242, 100 N.E. 3d 118, ¶111; *State v. Doan,* 12th Dist. Clinton No. CA97-12-014, 2000 WL 221963, *14 (Feb. 28, 2000).

{¶53} In the case at bar, the CI did not know Colston. 2T. at 290. Detective Wilhite was able to find booking photographs and tattoo records from law enforcement databases that matched those he saw in the video. The records identified Colston. Colston's tattoos are visible in the video and photographic evidence showing him exchange cocaine for money with the CI. Colston concedes that showing the tattoos to the jury was for the purpose of identifying Colston as the person in the video and photographic evidence. [Appellant's brief at 5].

{¶54} Showing the tattoos to the jury is analogous to displaying other physical characteristics of the accused. In this case the tattoo was only used to identify Colston. Accordingly, in that situation, evidence regarding the identifying tattoo falls outside the scope of the privilege to be free from compelled self-incrimination.

{¶55} Colston's Second Assignment of Error is overruled.

III.

{¶56} In the case at bar, Colston contends that the prosecution alleged that Colston participated in two drug transactions on two separate days. However, the prosecution only indicted Colston on one count of "complicity"[3] to drug trafficking and one count of engaging in a pattern of corrupt activity based on drug trafficking. In his Third Assignment of Error, Colston contends that the trial court erred in not instructing the jury that they must unanimously agree on which transaction or transactions Colston participated. [Appellant's Brief at 6-7]. Colston concedes he did not object to the jury instructions or proffer the trial court a jury instruction on this issue[4].

{¶57} Colston does not cite any statutory, case law or learned treaties from this or any other jurisdiction to support his argument. Accordingly, Colston's brief does not comply with App.R. (A)(7), which provides,

> The appellant shall include in its brief, under the headings and in the order indicated, all of the following: * * * An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies. The argument may be preceded by a summary.

{¶58} "If an argument exists that can support [an] assignment of error, it is not this court's duty to root it out." *Thomas v. Harmon*, 4th Dist. Lawrence No. 08CA17, 2009-Ohio-3299, at ¶14, *quoting State v. Carman*, 8th Dist. Cuyahoga No. 90512, 2008-Ohio-

---

[3] Colston incorrectly refers to his conviction in Count 1 of the Indictment as "complicity" when in fact Colston was indicted and convicted of Conspiracy to trafficking in cocaine pursuant to R.C. 2923.01. *See*, Appellant's Brief at 6.

[4] Nor does he assign as error on appeal that trial counsel was ineffective in failing to raise this issue in the trial court.

4368, at ¶31. "It is not the function of this court to construct a foundation for [an appellant's] claims; failure to comply with the rules governing practice in the appellate courts is a tactic which is ordinarily fatal." *Catanzarite v. Boswell*, 9th Dist. Summit No. 24184, 2009-Ohio-1211, at ¶16, *quoting Kremer v. Cox*, 114 Ohio App.3d 41, 60, 682 N.E.2d 1006(9th Dist. 1996). Therefore, "[w]e may disregard any assignment of error that fails to present any citations to case law or statutes in support of its assertions." *Frye v. Holzer Clinic, Inc.*, 4th Dist. Gallia No. 07CA4, 2008-Ohio-2194, at ¶12. See, also, App.R. 16(A)(7); App.R. 12(A)(2); *Albright v. Albright*, 4th Dist. Lawrence No. 06CA35, 2007-Ohio-3709, at ¶16; *Tally v. Patrick*, 11th Dist. Trumbull No. 2008-T-0072, 2009-Ohio-1831, at ¶21-22; *Jarvis v. Stone*, 9th Dist. Summit No. 23904, 2008-Ohio-3313, at ¶23; *State v. Paulsen*, 4th Dist. Hocking Nos. 09CA15, 09CA16, 2010-Ohio-806, ¶6; *State v. Norman*, 5th Dist. Guernsey No. 2010-CA-22, 2011-Ohio-596, ¶29; *State v. Untied*, 5th Dist. Muskingum No. CT20060005, 2007 WL 1122731, ¶141.

{¶59} An appellate court may rely upon App.R. 12(A) in overruling or disregarding an assignment of error because of "the lack of briefing" on the assignment of error. *Hawley v. Ritley,* 35 Ohio St.3d 157, 159, 519 N.E.2d 390, 392-393(1988); *Abon, Ltd. v. Transcontinental Ins. Co.*, 5th Dist. Richland No. 2004-CA-0029, 2005 WL 1414486, ¶100; *State v. Miller*, 5th Dist. Ashland No. 04-COA-003, 2004-Ohio-4636, ¶41. "Errors not treated in the brief will be regarded as having been abandoned by the party who gave them birth." *Uncapher v. Baltimore & Ohio Rd. Co.*, 127 Ohio St. 351, 356, 188 N.E. 553, 555(1933).

{¶60} In the interests of justice we will proceed to consider this assignment of error.

### 3.1 Standard of Appellate Review.

{¶61} In *Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35(1999) the United States Supreme Court held that because the failure to properly instruct the jury is not in most instances structural error, the harmless-error rule of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 applies to a failure to properly instruct the jury, for it does not necessarily render a trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.

{¶62} Crim.R. 52(B) provides that, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804(1978), paragraph three of the syllabus. In order to find plain error under Crim.R. 52(B), it must be determined, but for the error, the outcome of the trial clearly would have been otherwise. Id. at paragraph two of the syllabus. The defendant bears the burden of demonstrating that a plain error affected his substantial rights. *United States v. Olano*, 507 U.S. at 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 308(1993); *State v. Perry*, 101 Ohio St.3d 118, 120 802 N.E.2d 643, 646(2004). Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error and should correct it only to 'prevent a manifest miscarriage of justice.'" *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240(2002), *quoting State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804(1978), paragraph three of the syllabus. *Perry,* supra, at 118, 802 N.E.2d at 646.

{¶63}  An erroneous jury instruction does not constitute plain error unless, but for the error, the outcome of the trial clearly would have been otherwise. *State v. Cunningham,* 105 Ohio St.3d 197, 824 N.E.2d 504, 2004–Ohio–7007, ¶ 56. *See, also, State v. Adams,* 62 Ohio St.2d 151, 154, 404 N.E.2d 144(1980) (holding that a trial court's failure to specifically charge the jury on every element of an offense is not per se plain error, but could result in plain error if the failure substantially prejudiced the defendant). Appellate courts notice plain error "'with the utmost caution, under exceptional circumstances [,] and only to prevent a manifest miscarriage of justice.'" *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240, 2002–Ohio–68, *quoting State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804(1978), paragraph three of the syllabus.

**3.2 Issue for Appellate Review**: *Whether the trial court committed a manifest miscarriage of justice by failing to specifically instruct the jury that they must unanimously agree on the same specific incident of conspiracy to trafficking in cocaine and engaging in a pattern of corrupt activity of trafficking in cocaine.*

{¶64}  In the case at bar, the jury unanimously convicted Colston of conspiracy to drug trafficking as well as engaging in a pattern of corrupt activity. The jury also found that the offenses pertained to trafficking cocaine in an amount greater than 100 grams.

{¶65}  In the case at bar, the trial court instructed the jury:

> One or more of the offenses I have defined for you provide alternative ways of committing the crime. For example, conspiracy to traffic in drugs can be committed by the planning of trafficking in drugs, or by facilitating the trafficking in drugs. Before you can find the Defendant guilty of an offense involving alternative ways of commission, you must all agree that at

least one of the alternatives has been proven beyond a reasonable doubt.

However, you need not be unanimous as to which alternative is established

beyond a reasonable doubt.

2T. at 403. The trial court's instructions to the jury taken as a whole correctly stated the law. We have reviewed the record of this case and find the evidence of Colston's guilt to be substantial. We find the trial court's instruction did not rise to level of plain error because the outcome of the trial would not have been otherwise absent the instruction. *See, State v. Broucker*, 5th Dist. Stark No. 2007CA00315, 2008–Ohio–2946, ¶ 38.

{¶66} Evidence was presented that on two occasions the CI arranged to purchase specific amounts of cocaine from Claytor. The pair arranged the price, amount and location for the transaction. Colston arrived on both occasions to deliver the cocaine and collect the money. Video and photographic evidence was submitted to corroborate the fact that Colston exchanged cocaine for money on both occasions.

{¶67} We decline to find plain error in the trial court's jury instructions because no manifest miscarriage of justice occurred.

{¶68} Colston's Third Assignment of Error is overruled.

IV.

{¶69} In his Fourth Assignment of Error, Colston argues that the trial court erred in giving the jury an instruction on flight from the jurisdiction. Colston did object to the instruction on the record.

**4.1 Standard of Appellate Review.**

{¶70} "[A]fter arguments are completed, a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence

and discharge its duty as the fact finder." *State v. Comen,* 50 Ohio St.3d 206, 553 N.E.2d 640(1990), paragraph two of the syllabus.

{¶71} In *Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 25(1999), the United State Supreme Court held that because the failure to properly instruct the jury is not in most instances structural error, the harmless-error rule of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705(1967) applies to a failure to properly instruct the jury, for it does not necessarily render a trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.

{¶72} It is well established that evidence of flight is admissible, as it tends to show consciousness of guilt. *Sibron v. New York*, 392 U.S. 40, 66, 88 S.Ct. 1889, 20 L.Ed.2d 917(1967). Further, a jury instruction on flight is appropriate if there is sufficient evidence in the record to support the charge. *See United States v. Dillon*, 870 F.2d 1125(6th Cir.1989). The decision whether to issue a flight instruction rests within the sound discretion of the trial court and will not be reversed absent an abuse of discretion*. State v. Sims,* 13 Ohio App.3d 287, 289, 469 N.E.2d 554(1st Dist.1984). Abuse of discretion requires more than simply an error in judgment; it implies unreasonable, arbitrary, or unconscionable conduct by the court. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140(1983).

{¶73} "Harmless error is '[a]ny error, defect, irregularity, or variance which does not affect substantial rights' and 'shall be disregarded.' " *State v. Wolford,* 10th Dist. Franklin No. 19AP-284, 2020-Ohio-888, ¶ 10, quoting Crim.R. 52(A). "Overcoming harmless error requires a showing of undue prejudice or a violation of a substantial right." Id., *quoting State v. Koss*, 10th Dist. Franklin No. 13AP-970, 2014-Ohio-5042, ¶ 41; *In re*

*P.T.,* 9th Dist. Summit No. 24207, 2008-Ohio-4690, ¶ 17. "Reviewing courts normally disregard trial errors that are harmless." *O'Neal v. McAninch*, 513 U.S. 432, 434, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995).

**4.2 Issue for Appellate Review**: *Whether but for the instruction on flight, the verdict would have been different.*

{¶74} Evidence was presented that on two occasions the CI arranged to purchase specific amounts of cocaine from Claytor. The pair arranged the price, amount and location for the transaction. Colston arrived on both occasions to deliver the cocaine and collect the money. Video and photographic evidence was submitted to corroborate the fact that Colston exchanged cocaine for money on both occasions.

{¶75} It appears "beyond a reasonable doubt that the jury instruction on "flight" did not contribute to the verdict obtained." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed .2d 705 (1967); *see Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) ("[A]n otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt").

{¶76} Thus we find that even if it was error to instruct the jury on flight was error, we would conclude that it was harmless error beyond a reasonable doubt.

{¶77} Colston's Fourth Assignment of Error is overruled.

V. & VI.

{¶78} In his Fifth Assignment of Error, Colston argues that there is insufficient evidence to support his convictions for conspiracy to trafficking in cocaine and engaging

in a pattern of corrupt activity.  In his Sixth Assignment of Error, Colston contends that his convictions are against the manifest weight of the evidence.

### 5.1 Standard of Appellate Review – Sufficiency of the Evidence.

{¶79}   The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...."  This right, in conjunction with the Due Process Clause, requires that each of the material elements of a crime be proved to a jury beyond a reasonable doubt.  *Alleyne v. United States*, 570 U.S. __, 133 S.Ct. 2151, 2156, 186 L.Ed.2d 314 (2013); *Hurst v. Florida*, 136 S.Ct. 616, 621, 193 L.Ed.2d 504 (2016).   The test for the sufficiency of the evidence involves a question of law for resolution by the appellate court.  *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶30.  "This naturally entails a review of the elements of the charged offense and a review of the state's evidence."  *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶13.

{¶80}   When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed.  *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *Walker*, ¶30.  "The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *Jenks* at paragraph two of the syllabus.  *State v. Poutney*, 153 Ohio St.3d 474, 2018-Ohio-22, 97 N.E.3d 478, ¶19.  Thus, "on review for evidentiary sufficiency we do not second-guess the jury's credibility determinations; rather, we ask whether, 'if believed, [the evidence] would convince the average mind of the defendant's guilt beyond a reasonable doubt.'"  *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001),

*quoting Jenks* at paragraph two of the syllabus; *Walker,* ¶31. We will not "disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.'" *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 94, *quoting State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997); *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶74.

**5.2 Issue for Appeal:** *Whether, after viewing the evidence in the light most favorable to the prosecution, the evidence, if believed, would convince the average mind of Colston's guilt on each element of the crimes for which he was convicted beyond a reasonable doubt.*

**{¶81}** Specifically, Colston argues that "there is insufficient evidence that the drugs obtained from the confidential informant, did, in fact, come from Colston." [Appellant's brief at 10].

**5.2.1 Conspiracy.**

**{¶82}** To be convicted of conspiracy to trafficking in cocaine in an amount greater than 100 grams the jury would need to find beyond a reasonable doubt that Colston,

> with purpose to commit or to promote or facilitate the commission
> of…a felony drug trafficking, manufacturing, processing, or possession
> offense…
>
> (1) With another person or persons, plan or aid in planning the
> commission of any of the specified offenses;

(2) Agree with another person or persons that one or more of them will engage in conduct that facilitates the commission of any of the specified offenses.

(B) No person shall be convicted of conspiracy unless a substantial overt act in furtherance of the conspiracy is alleged and proved to have been done by the accused or a person with whom the accused conspired, subsequent to the accused's entrance into the conspiracy. For purposes of this section, an overt act is substantial when it is of a character that manifests a purpose on the part of the actor that the object of the conspiracy should be completed.

R.C. 2923.01.  Trafficking in cocaine in Colston's case is defined as, knowingly sell or offer to sell cocaine in an amount equaling 100 grams. R.C. 2925.03(A)(1)(C)(4)(g).

{¶83}  In the case at bar, the CI testified that he would telephone Claytor. The CI and Claytor would discuss the amount, price, and where the exchange would occur.  At the scheduled time and place Colston would arrive with the agreed to amount of cocaine and would ask for the agreed upon amount of money. Colston's tattoos are visible in the video and photographic evidence showing him exchange cocaine for money with the CI. Detective Wilhite corroborated the CI's testimony. Video and photographic evidence was presented showing Colston exchange cocaine and discussing possible future drug transactions with the CI. 1T. at 188-189; 207.

{¶84} Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Colston conspired with Claytor to sell cocaine in a greater than 100 grams. We hold,

therefore, that the state met its burden of production regarding each element of the crimes of conspiracy to trafficking in cocaine and, accordingly, there was sufficient evidence to support Colston's conviction.

### 5.2.2. Engaging in a Pattern of Corrupt Activity.

{¶85}   R.C. 2923.32(A) (1), provides "No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt." "Enterprise" is defined as including,

> Any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity. "Enterprise" includes illicit as well as licit enterprises.

R.C. 2923.31(C). As the Ohio Supreme Court has observed,

> A RICO offense is dependent upon a defendant committing two or more predicate offenses listed in R.C. 2923.31(I). However, a RICO offense also requires a defendant to be "employed by, or associated with" an "enterprise" and to "conduct or participate in" an "enterprise through a pattern of corrupt activity."  R.C. 2923.32(A)(1).  "Such pattern must include both a relationship and continuous activity, as well as proof of the existence of an enterprise. Thus, the conduct required to commit a RICO violation is independent of the conduct required to commit [the underlying predicate offenses]." *State v. Dudas*, 11th Dist. Lake Nos. 2008–L–109 and 2008–L–110, 2009-Ohio-1001, ¶ 46. * * * The intent of RICO is "'to criminalize the

pattern of criminal activity, not the underlying predicate acts.' " *State v.*

*Thomas*, 3d Dist. Allen Nos. 1–11–25 and 1–11–26, 2012-Ohio-5577, ¶ 61,

*quoting State v. Dodson*, 12th Dist. Butler No. 2009–07–1147, 2011-Ohio-

6222, ¶ 68.

 *State v. Miranda*, 138 Ohio St.3d 184, 2014-Ohio-451, 5 N.E.3d 603, ¶ 13. The Supreme

Court of Ohio has emphasized, "merely committing successive or related crimes is not

sufficient to" prove there was a pattern of corrupt activity.  *State v. Schlosser*, 79 Ohio

St.3d 329, 333, 681 N.E.2d 911 (1997).

{¶86}   Pursuant to  R.C. 2923.31(E), " '[p]attern of corrupt activity' means two or

more incidents of corrupt activity * * * that are related to the affairs of the same enterprise,

are not isolated, and are not so closely related to each other and connected in time and

place that they constitute a single event." R.C. 2923.32 requires that the defendant be

"associated" with an "enterprise."  R.C. 2923.32(A)(1);  *State v. Sparks*, 12th Dist., 2014-

Ohio-1130, 10 N.E.3d 755, ¶ 19, *citing State v. Campbell*, 5th Dist. No. 07-CA-A-08-0041,

2008-Ohio-2143, ¶23. Under  R.C. 2923.31(C), " '[e]nterprise' includes any individual,

sole proprietorship, partnership, limited partnership, corporation, trust, union, government

agency, or other legal entity, or any organization, association, or group of persons

associated in fact although not a legal entity." The state has "to prove that each defendant

was voluntarily connected to the pattern [of corrupt activity comprising the enterprise],

and performed two or more acts in furtherance of it."  *State v. Sieferd*, 151 Ohio App.3d

103, 783 N.E.2d 591, 2002-Ohio-6801, ¶ 43, *quoting State v. Schlosser*, 79 Ohio St.3d

329, 334, 681 N.E.2d 911 (1997).

{¶87}  In *State v. Groce*, the 10th District Court of Appeals observed,

In *Boyle v. United States*, 556 U.S. 938, 129 S.Ct. 2237, 173 L.Ed.2d 1265 (2009), the United States Supreme Court set forth a test for determining when there is an association-in-fact enterprise. Appellate courts of this state have concluded the *Boyle* test applies to the definition of enterprise utilized in R.C. 2923.31(C). *See State v. Dodson*, 12th Dist. No. CA2010-08-191, 2011-Ohio-6222, 2011 WL 6017950, ¶ 20; *State v. Yavorcik*, 8th Dist., 2018-Ohio-1824, 113 N.E.3d 100, ¶ 80; *State v. Christian*, 2d Dist. No. 25256, 2016-Ohio-516, 56 N.E.3d 391, ¶ 26; *State v. Kozic*, 7th Dist. No. 11 MA 135, 2014-Ohio-3807, 2014 WL 4347618, ¶ 105-07; *State v. Birdsong*, 11th Dist. No. 2013-L-003, 2014-Ohio-1353, 2014 WL 1348846, ¶ 46. Under the *Boyle* test, "an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle* at 946, 129 S.Ct. 2237.

10th Dist. Franklin No. 18AP-51, 2019-Ohio-007, ¶ 21. "The existence of an enterprise, sufficient to sustain a conviction for engaging in a pattern of corrupt activity under R.C. 2923.32(A)(1), can be established without proving that the enterprise is a structure separate and distinct from a pattern of corrupt activity." *State v. Beverly*, 143 Ohio St.3d 258, 2015-Ohio-219, 37 N.E.3d 116, syllabus.

{¶88} In the case at bar, the "purpose" of the criminal enterprise was to sell cocaine. An "association-in-fact enterprise is a 'group of persons associated together for a common purpose of engaging in a course of conduct.' " *Boyle v. United States*, 556

U.S. 938, 946, 129 S.Ct. 2237 (2009), *quoting United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524 (1981). In the case at bar, Claytor set-up the sale of cocaine to the CI on September 9, 2016 and September 15, 2016. Colston arrived on each occasion with the cocaine, which he exchanged for money with the CI. On September 15, 2016, Claytor telephoned the CI while in Colston's car to discuss a discrepancy in price. 1T. at 204-205. Detective Wilhite was able to pull alongside Colston's car while it was at a red light.

{¶89} Accordingly, in the case at bar, the pattern of corrupt activity under R.C. 2923.32(A)(1) included both a relationship and continuous activity, as well as proof of the existence of an enterprise.

{¶90} Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Colston committed the crime of engaging in a pattern of corrupt activity as alleged in the Indictment. We hold, therefore, that the state met its burden of production regarding each element of the crime of engaging in a pattern of corrupt activity as alleged in the Indictment and, accordingly, there was sufficient evidence to submit the charge to the jury and to support Colston's' conviction.

**6.1 Standard of Appellate Review – Manifest Weight.**

{¶91} As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as*

*stated by State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355; *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001).

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.

* * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶92} The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. *State v. Issa,* 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy*, 4th Dist. Ross No. 07CA2953, 2008–Ohio–1744, ¶ 31. Because the trier of fact sees and hears the witnesses and is particularly competent to decide whether, and to what extent, to credit the testimony of particular witnesses, the appellate court must afford substantial deference to its determinations of credibility. *Barberton v. Jenney,* 126 Ohio St.3d 5, 2010–Ohio–2420, 929 N.E.2d 1047, ¶ 20. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002–

Ohio–1152, at ¶ 13, *citing State v. Gore,* 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999). Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer*, 4th Dist. Pickaway No. 11CA9, 2012–Ohio–1282, ¶ 24.

**{¶93}** Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury, but must find that " 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id.

**6.2. Issue for Appellate Review***: Whether the jury clearly lost their way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered.*

**{¶94}** The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP–604, 2003–Ohio–958, ¶ 21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197

N.E.2d 548 (1964); *State v. Burke,* 10th Dist. Franklin No. 02AP–1238, 2003–Ohio–2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997).

{¶95} In the case at bar, the jury heard the witnesses and viewed the evidence. The jury saw the CI and Detective Wilhite subject to cross-examination. The jury was also able to see the events in real time via video, audio and photographic evidence. The jurors were able to view Colston's tattoos. The jury heard Colston's attorney's arguments and explanations about the CI's credibility, his actions, and the lack of view available to the undercover law enforcement officers who were monitoring the transactions. Thus, a rational basis exists in the record for the jury's decision.

{¶96} We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. Based upon the foregoing and the entire record in this matter we find Colston's convictions are not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury heard the witnesses, evaluated the evidence, and was convinced of Colston's guilt. The jury neither lost his way nor created a miscarriage of justice in convicting Colston of the offenses.

{¶97} Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crimes for which Colston was convicted.

{¶98} Colston's Fifth and Sixth Assignments of Error are overruled.

VII.

{¶99} In his Seventh Assignment of Error, Colston argues the trial court lacked authority to find that he was a major drug offender. Specifically, Colston maintains R.C. 2941.141 is unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466, 477, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) because it requires judicial fact-finding that increases a defendant's mandatory minimum sentence.

{¶100} Because Colston did not raise this issue in the trial court, we are limited to reviewing his contention for plain error. *In re M.D.*, 38 Ohio St.3d 149, 151, 527 N.E.2d 286(1988).

**7.1. Standard of Appellate Review.**

{¶101} Crim.R. 52(B) affords appellate courts discretion to correct "[p]lain errors or defects affecting substantial rights" notwithstanding an accused's failure to meet his obligation to bring those errors to the attention of the trial court.  However, the accused bears the burden to demonstrate plain error on the record, *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 16, and must show "an error, i.e., a deviation from a legal rule" that constitutes "an 'obvious' defect in the trial proceedings," *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

{¶102} Even if the error is obvious, it must have affected substantial rights, and "[w]e have interpreted this aspect of the rule to mean that the trial court's error must have

affected the outcome of the trial." Id. The Ohio Supreme Court recently clarified in *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, that the accused is "required to demonstrate a reasonable probability that the error resulted in prejudice—the same deferential standard for reviewing ineffective assistance of counsel claims." Id. at ¶ 22, *citing United States v. Dominguez Benitez*, 542 U.S. 74, 81–83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004). *Accord*, *State v. Thomas*, ___ Ohio St.3d ___, 2017-Ohio-8011, ___N.E.3d ____ (Oct. 4, 2017), ¶32-34.

{¶103} If the accused shows that the trial court committed plain error affecting the outcome of the proceeding, an appellate court is not required to correct it; the Supreme Court has "admonish[ed] courts to notice plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *Barnes* at 27, 759 N.E.2d 1240, *quoting State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. *Accord, State v. Thomas*, 152 Ohio St.3d 15, 2017-Ohio-8011, 92 N.E.3d 821, ¶32-34.

**7.2 Issue for Appellate Review:** *Whether the trial court increased the penalty for Colston's crimes beyond the statutory maximum based upon facts not found by the jury.*

{¶104} R.C. 2929.01 provides,

(W) "Major drug offender" means an offender who is convicted of or pleads guilty to the possession of, sale of, or offer to sell any drug, compound, mixture, preparation, or substance that consists of or contains at least one thousand grams of hashish; *at least one hundred grams of cocaine*; at least one thousand unit doses or one hundred grams of heroin; at least five thousand unit doses of L.S.D. or five hundred grams of L.S.D.

in a liquid concentrate, liquid extract, or liquid distillate form; at least fifty grams of a controlled substance analog; at least one thousand unit doses or one hundred grams of a fentanyl-related compound; or at least one hundred times the amount of any other schedule I or II controlled substance other than marihuana that is necessary to commit a felony of the third degree pursuant to section 2925.03, 2925.04, 2925.05, or 2925.11 of the Revised Code that is based on the possession of, sale of, or offer to sell the controlled substance. (Emphasis added).

{¶105} R.C. 2941.1410, provides, in relevant part,

(A) Except as provided in sections 2925.03 and 2925.11 and division (E)(1) of section 2925.05 of the Revised Code, the determination by a court that an offender is a major drug offender is precluded unless the indictment, count in the indictment, or information charging the offender specifies that the offender is a major drug offender. The specification shall be stated at the end of the body of the indictment, count, or information, and shall be stated in substantially the following form:

"SPECIFICATION (or, SPECIFICATION TO THE FIRST COUNT). The Grand Jurors (or insert the person's or prosecuting attorney's name when appropriate) further find and specify that (set forth that the offender is a major drug offender)."

* * *

(C) The court shall determine the issue of whether an offender is a major drug offender.

(D) As used in this section, "major drug offender" has the same meaning as in section 2929.01 of the Revised Code. (Emphasis added.

{¶106} R.C. 2925.03(A)(1)(C), Trafficking Offenses, provides, in relevant part,

(4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of trafficking in cocaine. The penalty for the offense shall be determined as follows:

\* \* \*

(g) If the amount of the drug involved equals or exceeds one hundred grams of cocaine and regardless of whether the offense was committed in the vicinity of a school or in the vicinity of a juvenile, trafficking in cocaine is a felony of the first degree, the offender is a major drug offender, and the court shall impose as a mandatory prison term a maximum first degree felony mandatory prison term.

{¶107} In *United States v. Haymond*, the United States Supreme Court observed,

In *Apprendi, [v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435(2000)] for example, a jury convicted the defendant of a gun crime that carried a maximum prison sentence of 10 years. But then a judge sought to impose a longer sentence pursuant to a statute that authorized him to do so if he found, by a preponderance of the evidence, that the defendant had committed the crime with racial bias. *Apprendi* held this scheme unconstitutional. "[A]ny fact that increases the penalty for a crime beyond the prescribed statutory maximum," this Court explained, "must be

submitted to a jury, and proved beyond a reasonable doubt" or admitted by the defendant. 530 U. S., at 490. Nor may a State evade this traditional restraint on the judicial power by simply calling the process of finding new facts and imposing a new punishment a judicial "sentencing enhancement." Id., at 495. "[T]he relevant inquiry is one not of form, but of effect—does the required [judicial] finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" Id., at 494.

__U.S.__, 139 S.Ct. 2369, 204 L.Ed.2d 897(2019).

{¶108} Unlike *Apprendi,* the jury in the case at bar was instructed that if they found Colston guilty of conspiracy to trafficking in cocaine and engaging in a pattern of corrupt activity, they must also decide whether the state proved beyond a reasonable doubt that the amount of cocaine involved was greater than 100 grams. 2T. at 399; 401. The jury specifically made this finding on its verdict form. Accordingly, the trial judge did not make any factual finding.  The jury found the facts necessary to sentence Colston as a Major Drug Offender.

{¶109}  R.C. 2941.1410 does not increase the statutory maximum sentence for any crime based upon facts not submitted to a jury, and proven beyond a reasonable doubt. *State v. Elkins,* 148 Ohio App.3d 370, 2002-Ohio-2914, 773 N.E.2d 593, ¶20; *State v. McDermott,* 6th Dist. Lucas No. L-03-1110, 2005-Ohio-2095, ¶ 53.

{¶110} Colston's Seventh Assignment of Error is overruled.

VIII.

{¶111} In his Eight Assignment of Error, Colston challenges the imposition of the consecutive terms on the ground that the record does not support the imposition of consecutive sentences.

**8.1 Standard of Appellate Review.**

{¶112} We review felony sentences using the standard of review set forth in R.C. 2953.08. *State v. Marcum*, 146 Ohio St.3d 516, 2016–Ohio–1002, 59 N.E.3d 1231, ¶ 22*; State v. Howell,* 5th Dist. Stark No. 2015CA00004, 2015-Ohio-4049, ¶ 31.

{¶113} In *State v. Gwynne,* a plurality of the Supreme Court of Ohio held that an appellate court may only review individual felony sentences under R.C. 2929.11 and R.C. 2929.12, while R.C. 2953.08(G)(2) is the exclusive means of appellate review of consecutive felony sentences. ___ Ohio St.3d ___, 2019-Ohio-4761, ¶16-18; *State v. Anthony,* 11th Dist. Lake No. 2019-L-045, 2019-Ohio-5410, ¶60.

{¶114} R.C. 2953.08(G)(2) provides we may either increase, reduce, modify, or vacate a sentence and remand for resentencing where we clearly and convincingly find that either the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D), 2929.14(B)(2)(e) or (C)(4), or 2929.20(I), or the sentence is otherwise contrary to law. *See, also, State v. Bonnell*, 140 Ohio St.3d 209, 2014–Ohio–3177, 16 N.E.2d 659, ¶ 28; *State v. Gwynne,* ¶16.

{¶115} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118(1954), paragraph three of the syllabus. *See* also, In *re Adoption of Holcomb*, 18 Ohio St.3d 361 (1985). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing

court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross,* 161 Ohio St. at 477 120 N.E.2d 118.

{¶116} In the case at bar, Colston does not contest the length of his individual sentences; rather his arguments center upon the trial court's decision to make the sentences consecutive. [Appellant's brief at 14]. As the Ohio Supreme Court noted in *Gwynne*,

> Because R.C. 2953.08(G)(2)(a) specifically mentions a sentencing judge's findings made under R.C. 2929.14(C)(4) as falling within a court of appeals' review, the General Assembly plainly intended R.C. 2953.08(G)(2)(a) to be the exclusive means of appellate review of consecutive sentences. *See State v. Vanzandt*, 142 Ohio St.3d 223, 2015-Ohio-236, 28 N.E.3d 1267, ¶ 7 ("We primarily seek to determine legislative intent from the plain language of a statute").
>
> While R.C. 2953.08(G)(2)(a) clearly applies to consecutive-sentencing review, R.C. 2929.11 and 2929.12 both clearly apply only to *individual* sentences.

2019-Ohio-4761, ¶¶16-17(emphasis in original).

{¶117} "In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry[.]" *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, ¶37. Otherwise, the imposition of consecutive sentences is contrary to law. *See* Id. The trial court is not required "to give a talismanic incantation of

the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry." Id.

{¶118} Colston agrees that the trial judge in his case made the requisite findings to impose consecutive sentences under R.C. 2929.14(C)(4). [Appellant's Brief at 14].

**8.2 Issue for Appellate Review:** *Whether the trial court's decision to impose consecutive sentences in Colston's case is supported by the record.*

{¶119} According to the Ohio Supreme Court, "the record must contain a basis upon which a reviewing court can determine that the trial court made the findings required by R.C. 2929.14(C)(4) before it imposed consecutive sentences." *Bonnell*, ¶28. "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." Id. at ¶29. The plurality of the Ohio Supreme Court in *Gwynne* held that appellate courts may not review consecutive sentences for compliance with R.C. 2929.11 and R.C. 2929.12. *See* 2019-Ohio- 4761, ¶18.

{¶120} Colston's sole arguments are that the record does not support consecutive sentences because he did not cause physical harm to others when he committed his offenses and that the offenses did not involve an egregious amount of drugs. [Appellant's brief at 14].

{¶121} The trial court heard arguments made by the parties and reviewed the pre-sentence investigation. At sentencing, the trial court found:

> Upon review of the presentence investigation, the Court would note that you had a prior conviction with the federal government back in 2003, served five years and had six years of parole.

There were separate events indicated on the video. These are separate type of charges in regards to the engaging in a pattern of corrupt activity, including conspiracy to distribute drugs, but the amount involved needed to get to this is a hundred grams and that involved the two transactions actually combined to get to that amount.

Based on the video testimony at the trial, you were delivering for somebody else. And that's what the court saw. That's what the jury saw. But you were still participating in the crime.

Sentencing transcript, Sept. 11, 2019 at 6.

{¶122} The record demonstrates and Colston agrees that the trial court made the findings required in order to impose consecutive sentences. Upon review, we find that the trial court's sentencing on the charges complies with applicable rules and sentencing statutes. The sentence was within the statutory sentencing range. Further, the record contains evidence supporting the trial court's findings under R.C. 2929.14(C)(4). Therefore, we have no basis for concluding that it is contrary to law.

{¶123} Colston's Eighth Assignment of Error is overruled.

{¶124} The judgment of the Muskingum County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Delaney, J., and

Baldwin, J., concur